————o————

GRANBY MINING AND SMELTING COMPANY, Appellant, *vs.* O. T. TURLEY, Respondent.

1. *Contract for digging ore—Title of miners thereto.*—Under an agreement with the owner of the land, certain specified lots were set apart to a number of miners, and for digging ore therefrom, they were to receive a given compensation in kind or in money. But the contract especially provided that no right, title or interest in or to any of the ores should rest in the miners, but that the same should remain the absolute property of the owner. *Held,* that the miners had a lien upon the ore and the right of possession till the compensation was paid or tendered, but no other title thereto. They had no right to sell it; and any one purchasing with knowledge of the facts could take no title.

### Appeal from Jasper County Circuit Court.

*H. H. Harding,* for Appellant, cited Lunsford vs. Mine La Motte, 54 Mo., 426.

*G. I. Van Allen,* for Respondent.

WAGNER, Judge, delivered the opinion of the court.

This action was brought by the plaintiff to recover the possession of a quantity of lead mineral. The cause was submitted to the court on an agreed statement of facts, and there was a judgment for the defendant, from which plaintiff appealed.

It is agreed by the parties that the lead ore or mineral, which is the subject of controversy, was dug up and taken from lands belonging to, and which was the property of the plaintiff and in its possession, by certain miners, who dug the same under the terms and conditions of a contract entered into between them and the plaintiff. The contract is set out and made a part of the agreement, and by its terms it is shown that plaintiff set apart and permitted each of the miners to have certain lots of mineral land, and that the miners agreed to deliver to the plaintiff, weekly, all minerals dug, mined or raised from the mining lots, and that they would not remove any such mineral from the mining lots, nor permit it to be taken therefrom, or delivered to any other person or persons. The plaintiff agreed, as a full compensation for the working of the mining lots, to deliver to the miners at the nearest furnace of the plaintiff four hundred pounds of smelted lead for each thousand pounds of first class merchantable lead mineral, or the cash value thereof, according to the election of the miners, subject to a deduction, however, of $4 for each thousand pounds of mineral lead so raised. The contract then contains this express stipulation : "No right, title or interest of, in or to any land, ores or minerals, is hereby granted or conveyed, and it is hereby expressly agreed and understood that all ores or minerals, whether the same remain in the ground or be severed or removed therefrom, is and shall remain in every event the absolute property of said company, and that the lead delivered or the money paid to the said parties of the second part, respectively, is not and shall not in any event be considered as the price paid for minerals or ores, but is, and in every event shall be, only compensation for labor and services rendered by the said parties of the second part, respec-

tively, in working said mining lots." It is further agreed between the parties that the plaintiff performed all its part of the contract, and that the defendant purchased the lead mineral and ore from the miners for a round price, and the same was delivered to the defendant by the miners, and that the defendant at the time of the purchase had full notice of the contract between the plaintiff and the miners, and that he had knowledge of the fact that the lead ore and mineral was dug and taken under the contract by the miners from plaintiff's lands.

The only question is, whether the miners, when they dug the ore from the plaintiff's land, acquired any title to it. If they did, then their sale to the defendant was simply a violation of their contract with the plaintiff, for which they would be responsible in damages, but the rights of the defendant would not be affected.

That the ore or mineral originally belonged to the plaintiff is beyond doubt; and had it been taken without any authority, as by a trespasser, no title would have passed thereby. But the contract was the authority to the miners, and by that contract their rights and the nature and the extent of the property they acquired in the ore and mineral, must be determined. They were to dig it up and deliver it to the plaintiff for a certain and definite compensation. That there should be no mistake or misunderstanding, however, in reference to which party possessed the title, and whose property the ore continued to be, an express stipulation was entered into. That stipulation bound both parties, and is precise and unambiguous, and cannot be misconstrued. It provides that no right, title or interest to any of the ores or mineral shall vest in the miners, but that the same shall remain as the absolute property of the plaintiff. An agreed compensation was to be paid to the miners for the amount of ore or mineral they dug up and delivered, and that was the whole measure of their rights. It is evident, therefore, that they acquired no title to the ore ; they had a lien upon it, and could not be compelled to part with the possession, or deliver it till the com-

pensation to which they were entitled was paid. No right of property passed by the arrangement and none was intended to pass.

The effect of the agreement was that plaintiff should furnish certain property upon which the miners were to do a prescribed amount of work and receive a certain stipulated sum therefor. When they performed the work upon the property their right to receive the pay became absolute, and they could not be forced to part with the possession till payment was made; but when payment was made or tendered, then all control over the property on the part of the miners ceased. They never possessed any right or title in the mineral apart from their lien, and therefore they could neither sell or convey it. The defendant purchased with a full knowledge of all these facts, and therefore stands in no better position than the miners would have occupied had they retained the possession.

For these reasons the judgment should be reversed and the cause remanded. All the judges concur, except Judge Vories, who is absent.