## E. A. WILLIAMS, Respondent, v. J. M. WILLIAMS, Appellant.

### Kansas City Court of Appeals, June 8, 1908.

1. **ASSAULT AND BATTERY: Evidence: Admitted Assault: Instructions.** Under the evidence held that the trial court was right in instructing that their finding must be for the plaintiff on the question of whether there was an assault by the defendant; and there was no need to send such an issue to the triers of fact when there was no such issue between the parties themselves.

2. ———: ———: **Injury: Instructions.** *Held,* instructions rightfully assumed that the plaintiff suffered physical injury by reason of the assault, for which she was entitled to compensatory damages.

3. ———: **Damages: Instructions: Punitory Damages.** *Held,* unnecessary to consider the instructions in regard to punitory damages since such damages, assessed by the jury, were remitted; and the errors in such instructions, if any, could not influence the finding on actual damages.

Appeal from Bates Circuit Court.—*Hon. Charles A. Denton,* Judge.

AFFIRMED.

*Silvers & Silvers* and *John A. Gilbreath* for appellant.

(1)   The only instruction given on actual damages was wrong.   In the case of Comer v. Taylor, 82 Mo. 347, an instruction containing the same vice was severely condemned and held reversible error.   Also in the case of Walters v. Cox, 67 Mo. App. 302, an instruction almost identical in language was held reversible error.   In Plummer v. City of Milan, 70 Mo. App. 601, an instruction of the same verbiage was likewise held reversible error.   (2)   A verdict obtained from a jury by a peremptory instruction and assumption of contested facts is not an untrammeled expression of the judgment of the jurors.   Brooks v. Barth, 98 Mo. App. 89.   (3)   Where the court instructs the jury on the measure of damages, it must instruct them correctly, because the measure of damages, is a question of law. Fry v. Estes, 52 Mo. App. 7; Kick v. Doerste, 45 Mo. App. 134, 141; Matney v. Gregg, 19 Mo. App. 107; Morrison v. Yancey, 23 Mo. App. 670; Williams v. Iron Co., 30 Mo. App. 662; Flint v. Railway, 38 Mo. App. 94; Wilburn v. Railway, 36 Mo. App. 203; Smedley v. Railway, 118 Mo. App. 104, 106; Husse v. Lemp, 26 Mo. 394; Deere Plow Co. v. Sullivan, 158 Mo. 453; Roosa v. Boston Loan Co., 132 Mass. 439; Bacon v. Charleton, 7 Cush. 581. ˙ (4)   Mental suffering or anguish alone cannot constitute an independent element of damages so as to constitute a cause of action, but must be connected with bodily injury and cannot otherwise be considered.   Sutherland on Damages (3 Ed.), sec. 1245, and cases cited; Sutherland, secs. 95 and 96, and cases cited; Spohn v. Railway, 116 Mo. 617; Strange v. Railway, 61 Mo. App. 586; Deming v. Railway, 80 Mo. App. 152.

*W. O. Jackson* and *T. J. Smith* for respondent.

(1)   The peremptory instructions to find for the plaintiff was proper. Bank v. Hainline, 67 Mo. App. 486.   (2)   Whenever the bodily or mental feelings of an individual are material to be proved, the usual expression of such feeling made at the time in question are original evidence. Squire v. Chillicothe, 89 Mo. 226; Goss v. Railway, 50 Mo. App. 614.   (3)   If the instructions are not definite enough to cover every branch of the case, the court will not reverse the case for that reason, unless the party desiring instruction has offered one that has been refused. Conwell v. Tran. Co., 106 Mo. App. 140; Wheeler v. Bowles, 163 Mo. 398.   (4)   And if the instruction is "You shall assess his damage in such a sum as you may believe will compensate the plaintiff" it is proper, and if the defendant wants further information he should offer other instructions. O'Neill v. Blase, 94 Mo. App. 668; McNamara v. Trans. Co., 106 Mo. App. 353.   (5)   The defendant's statement on the stand wherein he admits actual damages was done, are not like the testimony of other witnesses but being against his interest must be taken as true. Feary v. Railway, 162 Mo. 109.   (6) Where the case is for malicious assault and injury is sustained to the nervous system bodily impact is not necessary to maintain an action. Shellabarger v. Norris, 115 Mo. App. 670.   (7)   Damages may be given for humiliation and distress offered by the plaintiff on account of unlawful assault, though there be no bodily harm or battery. Leach v. Leach, 11 Tex. Civ. App. 699.

JOHNSON, J.—It is alleged in the petition that "defendant unlawfully, wilfully and maliciously assaulted and beat plaintiff by angrily catching hold of her and violently throwing her on the ground, by reason of which she has suffered and still suffers great

bodily pain and mental anguish; that said assault in-
jured plaintiff's right hip and shocked her whole sys-
tem and made her sick, sore and lame." The prayer is
for both compensatory and punitory damages. The
answer on which the cause went to trial was a general
denial. Verdict was for plaintiff in the sum of $900
actual and $500 exemplary damages, but she afterward
entered a remittitur for the amount of the exemplary
damages. Motion for new trial then was overruled
and defendant appealed.

Plaintiff, an unmarried woman, was sixty-four
years of age at the time of the assault and had been a
cripple from childhood. She occupied a farm of 120
acres and was having a field plowed. Early one morn-
ing, defendant, her brother, entered the field with teams,
plows and hands and began plowing where plaintiff's
plowman had left off the evening before. Plaintiff tes-
tified: "I walked right down the furrow meeting his
team; I told him he had no right in there; I believe I
told him he had no right, I would not be confident about
that, until the sheriff had put me off; I told him some-
thing about that, having no right in there. . . . He
answered me with an oath and told Dean, the man that
was with him, to take me away from there. I told
him not to touch me. He then called to Dean to take
his team or plow—I don't know which he said, I don't
remember the words. He then came around and caught
me by both arms . . . and throwed me out to the
right. I was meeting him going north and he was go-
ing south with his team. . . . He threw me and as
I fell I struck on my lame foot, and my hip is out of
place and it is stiff; and my knee, of course, bent and
doubled under me and I fell and struck my shoulder
on the ground. I was thrown on the plowed ground,
because I remember putting my hand in the plowed
ground when I got up. I don't know just how far I
fell; it was a terrible fall, it seemed to me. He threw

me with all the force of a mad man. . . . It hurt me very bad, but in the excitement I didn't pay much attention to it. I tried to stop him again as he came around; I didn't sit down in the furrow. . . . I got before the team somehow. He got down and took me by the foot, and turned me around in the furrow; but I wasn't sitting down in the furrow. He pushed me and shoved me down someway. I don't know just how. Then the third time I wasn't in front of the team at all, as he passed me, one of the horses shied at me a little, and he gave me a shove and a push and sent me over again. It was the first fall that hurt me so."

Plaintiff is supported by other witnesses and from the evidence introduced by her, it appears that defendant entered her farm and began cultivating it without her consent and when she protested and attempted to stop him, he angrily seized her by the arm and violently threw her out of the way of his teams and went on with his self-appointed task. Defendant, in his testimony, admits having entered the farm against the will of plaintiff and that he intended to and did employ physical force to overcome her opposition, but he denies he used any more force than was necessary to remove her from the path of the teams or that he threw her to the ground. He says he seized her by the arms and pushed her aside and when released, she fell down. Plaintiff received no broken bones, bruises or abrasions from the encounter, but whether she fell or was thrown on the ground, the evidence leaves no room to doubt that she suffered physical pain from the assault and her evidence strongly tends to show that her crippled leg and hip were injured seriously. At the request of plaintiff, the court instructed the jury, in part, as follows:

"The court instructs the jury that under the pleading and evidence in this case their finding and verdict must be for the plaintiff, in whatever amount you shall find her to be entitled to under the evidence.

"In assessing the damage which you may find she has sustained in consequence of the assault, the jury should allow her as and for her actual damages such an amount as in their judgment will fairly and reasonably compensate her for all injuries which she sustained therefrom, not exceeding the sum of one thousand dollars.

"And in determining the amount of such injuries, the jury should take into consideration all physical pain and suffering, if any, which you may find she has sustained in consequence of such assault, together with all mental anguish to which she has been subjected in consequence thereof. In addition to this the jury are authorized to assess against the defendant, by way of punitive damages or smart money, such an amount, not exceeding two thousand dollars, as they shall believe from the evidence in this case ought to be paid by the defendant because of making the assault upon the plaintiff. Such damages are allowed and authorized under the law, not by way of compensation, but by way of punishment of the defendant for the doing willfully of an unlawful and wrongful act.

"Malice in law does not, as is generally understood, mean spite or ill will, but means the intentional doing of a wrongful act.

"The jury are instructed that in fixing the amount of exemplary damages, if any, to be assessed against defendant, you should consider the manner of the assault, if any, the feeling of defendant toward plaintiff, whether of ill-will or otherwise, and whether or not at the time he intended to do her any wrong; and if at the time of the alleged assault the defendant was attempting to do what he supposed he had the right to do; then this fact should also be taken into consideration in fixing the amount of such damages, if any, to be assessed against him.

"The jury, in determining the amount, if any,

which they will assess against the defendant as smart money or punitive damages, have a right to take into consideration the amount and value of the defendant's property, and his ability to pay such damages.

"The court further instructs the jury that in the placing of his hands upon the plaintiff by the defendant contrary to the known wish or consent of the plaintiff, at the time, was an unlawful assault and battery within the meaning of the law by the defendant and for which the plaintiff is entitled to recover from him damages therefor.

"The jury are instructed further that in arriving at their verdict in this case, they should assess separately whatever amount they find as actual or compensatory damages sustained by the plaintiff as the result of defendant's assault upon her, and the amount of punitive damages or smart money and in their verdict say how much they assess against the defendant for each kind of damage so assessed."

All of the instructions asked by defendant were refused. They are as follows:

"The court instructs the jury that if you find for plaintiff you shall assess her actual damages at such amount, not to exceed $1,000, as you believe from the evidence will reasonably compensate her for the injury to her, if any. But the burden is on the plaintiff to show by the preponderance of the evidence, that is the greater weight of the evidence, that she was substantially injured; and unless the plaintiff has proven to you by the preponderance of the evidence that she was substantially injured, or if you find the evidence on this point to be of equal balance, then you cannot assess to plaintiff any compensatory damages.

"The court instructs the jury that if you find that the defendant owned the land upon which the altercation occurred and was entitled to possession thereof, and that he went upon the same peaceably and began to

Williams v. Williams.

plow; that the plaintiff came out and got in the furrow in front of his team, to prevent his plowing; then he had a right to use such force as was reasonably necessary to remove her from obstructing him in the pursuit of such work, and if he used no more force than was reasonably necessary to remove her, then you should find for defendant.

"The court instructs the jury that if they find that defendant went peaceably upon the land where the difficulty occurred and was attempting to plow the same, and that the plaintiff undertook to prevent his plowing, by getting in front of his horses; that she refused to get out of the way, after being requested to do so, but told the defendant to drive over her; then the defendant had the right to remove her from the furrow, using no more force than was necessary to do so.

"The jury are instructed that if the plaintiff voluntarily placed herself in front of the team with which defendant was plowing, and stood in the furrow in front of such team and refused to move out of the way when told or requested to do so; then the defendant had a right to use such force as was reasonably necessary to remove plaintiff out of the way of his team in doing his plowing. And if you find that plaintiff did so place herself, and did so refuse to move, and that the defendant did not use any more force than was reasonably necessary to remove her, then your verdict should be for the defendant.

"The jury are instructed that under the evidence in this case they cannot find for plaintiff in any amount on her claim for exemplary damages."

We think the court took the proper view of the evidence in treating the charge of assault as proved and in submitting no other issues than those relating to damages. Defendant's admissions removed the fact of the assault from the field of debate. Not only does the

evidence of that fact adduced by plaintiff stand uncontradicted, but the testimony of defendant shows affirmatively that he entered the premises of plaintiff as a trespasser intent on taking possession by force and, in the accomplishment of his purpose, met the opposition of plaintiff by taking hold of her in hostility and overcoming her by the exercise of superior physical force. These facts constitute an assault under any definition of the term to be found in the books and, being admitted, they could not be a subject of difference among reasonable minds and there was no need to treat them as an issue to go to the triers of fact when they were not an issue between the parties themselves.

Defendant argues that the instructions given by the court should be condemned because they assume that plaintiff sustained physical injury from the assault for which she should be allowed compensatory damages. The extent of the physical injuries inflicted by defendant was the subject of controversy, but the fact that plaintiff received physical injury in some degree is an indisputable conclusion from the conceded facts. Defendant could not forcibly pull and drag plaintiff around and throw her, or cause her to fall, to the ground against her utmost resistance without inflicting some bodily pain and injury. Her evidence shows she was severely injured; his evidence attempts to minimize the injury, but after all is said, the fact appears beyond dispute that physical injury was sustained and there is no room in the evidence for an hypothesis of facts from which would follow the conclusion that plaintiff is entitled to nominal damages only.

Much of the argument urged on our consideration is addressed to questions relating to the subject of punitory damages, but as plaintiff remitted all but the compensatory damages awarded by the jury, we perceive no reason for discussing such questions. The verdict, as it stands, does not impress us as being ex-

cessive. According to the evidence of plaintiff, she had not fully recovered from the effects of the assault at the time of the trial. The verdict does not indicate that the jury was influenced by passion or prejudice, nor that if errors were committed relative to the issue of exemplary damages they influenced the jury in estimating the amount to be awarded as compensation. A careful inspection of the record discloses that the case was fairly tried and that the judgment is for the right party.

Accordingly it is affirmed. All concur.